UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                                 )<br>                                                                              )  No. 1:89-cr-180<br>                                                                              )<br>WILLIE HORTON,                                        )<br>                                                                              )<br>                            Defendant.               )<br>_____ ) | |

## MEMORANDUM OPINION & ORDER

Defendant Willie Horton has filed a Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) [Doc. No. 50] (the "Compassionate Release Motion") and a Motion for Appointment of Counsel [Doc. No. 51] (the "Motion for Counsel"), (collectively, the "Motions"). For the reasons stated below, the Motions are DENIED.

## I. BACKGROUND

In 1985, Horton had been convicted and sentenced as an adult for a variety of crimes, including multiple counts of assault with a deadly weapon, assault, carrying a pistol without a license, and one count of possession of cocaine. [Doc. No. 30] at ¶¶ 27, 30, 34, 35. As a result of these convictions and Horton's age at the time of his sentencing (notwithstanding that he was convicted as an adult), Horton was initially placed in the D.C. Youth Center; however, because of "continued dangerous behavior" Horton was moved to Lorton Maximum Security Facility, where on October 31, 1998, Horton, then age 21, murdered Harold Hoston in the shower area. *Id.* at ¶ 5. On July 20, 1989, a jury found Horton guilty of first-degree murder under 18 U.S.C. § 1111.[1] *Id.*

---

[1] Because Lorton Maximum Security Facility is a creation of Congress and the United States Attorney General has "constructive custody" over defendants sentenced by courts in the District of Columbia, Horton was prosecuted under 18 U.S.C. § 1111(b), under which first degree murder carries a mandatory minimum sentence of life. *See* Notes,

1

at 1. On September 22, 1989, Horton was sentenced to the mandatory minimum of life imprisonment. Horton is currently 56 and imprisoned at USP Florence ADMAX, a supermax facility. [Doc. No. 50] at 1. In his Compassionate Release Motion, Defendant seeks a sentence reduction to time served based on his purportedly deteriorating health due to his glaucoma and age, the risk of contracting COVID-19, his youth at the time of sentencing, the alleged disparity in sentence as to the sentence he would receive today, and his rehabilitation record.

## II. LEGAL STANDARD

### A. Appointment of Counsel

There is no right to counsel for post-conviction proceedings that occur after a conviction and sentence are final. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Notwithstanding, and as a matter of discretion, court-appointed counsel is in "some exceptional cases" necessary for "certain postconviction proceedings." *United States v. Legree*, 205 F.3d 724, 730 (4th Cir. 2000). As a general proposition, appointment of counsel may be warranted when the absence of counsel may lead to issues pertaining to the Defendant's due process or equal protection rights. *United States v. Taylor*, 414 F.3d 528, 537-39 (4th Cir. 2005). Generally, courts do not provide for the appointment of counsel for motions pursuant to 18 U.S.C. § 3582(c) except in exceptional cases. *See, e.g., United States v. Cropper*, No. 2:13-cr-27, 2021 WL 7710790, at *3 n.3 (E.D. Va. Sept. 7, 2021) (noting that in the absence of exceptional circumstances, counsel is not appointed for compassionate release proceedings).

### B. Compassionate Release

---

*Federal and Local Jurisdiction in the District of Columbia*, 92 YALE L.J. 292, 307-08 n.74 (1982); *see also United States v. Perez*, 488 F.2d 1057, 1059 (4th Cir. 1974) (finding federal jurisdiction over a prisoner who assaulted a guard at Lorton).

Horton's request for release is made pursuant to 18 U.S.C. § 3582(c)(1)(A), which permits release based on "extraordinary and compelling reasons." For this relief the Court must consider:

> (1) whether he has exhausted his administrative remedies; (2) if he has exhausted his administrative remedies, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; (3) if a warranted reduction exists, whether such a reduction is consistent with applicable policy statements of the Sentencing Commission; and (4) if so, what sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

*United States v. Redd*, 444 F. Supp. 3d 717, 722 (E.D. Va. 2020). There are currently no applicable policy statements. *United States v. McCoy*, 981 F.3d 271, 281-84 (4th Cir. 2020); *States v. Christopher*, No. 2:13-cr-117, 2023 WL 4055368 (E.D. Va. June 16, 2023). Thus, the Court may "consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)).

### III. ANALYSIS

**A. Motion for Counsel**

Horton contends that counsel is needed "[b]ecause he is unable to articulate his Motion for Compassionate Relief as well as a seasoned attorney." [Doc. No. 51]. This is insufficient. Compassionate Release proceedings are not "critical stages of prosecution" that implicate Sixth Amendment right to counsel. *Taylor*, 414 F.3d at 536; *see United States v. Legree*, 205 F.3d 724, 729-30 (4th Cir. 2000) (explaining that a motion pursuant to § 3582(c) "is not a do-over of an original sentencing proceeding where a defendant is cloaked in rights mandated by statutory law and the Constitution"). Here, Horton's Motion clearly presents his reasons for compassionate release. *See United States v. Stewart*, No. 16-cr-410, 2021 WL 948814, at *3 (D. Md. Mar. 12, 2021) (noting that where defendant adequately presented reasons for compassionate release, counsel would likely not affect the outcome and thus the motion for counsel was denied). Therefore, Defendant's Motion for Counsel is denied.

3

### B. Motion for Compassionate Release

Under 18 U.S.C. § 3582(c)(1)(A), a court can only modify a sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." The Fourth Circuit has interpreted the statute to mean that the defendant need only make an initial request to the Bureau of Prisons ("BOP") for compassionate release. *United States v. Ferguson*, 55 F.4th 262, 268 (4th Cir. 2022). After the initial request, a defendant must either fully exhaust his administrative rights to appeal the BOP's decision or wait 30 days from the initial request. *Id.* (citing *United States v. Muhammed*, 16 F.4th 126, 131 (4th Cir. 2021). While Horton did not appeal the BOP's decision, Horton waited 30 days from his initial request to file the Motion for Compassionate Release with the Court, and thus Horton has met the statutory requirements for the Court to rule on the merits of his Motion. [Doc. Nos. 50, 50-1] (filing dates).

Horton contends multiple extraordinary and compelling reasons exist to justify his release. First, Horton alleges that his asthma, glaucoma, and age place him at a severe risk of experiencing complications with COVID-19 and that there is currently an outbreak of COVID-19 at his institution of confinement. [Doc. No. 50] at 5. For COVID-19 to constitute an "extraordinary and compelling reason" justifying his release, Horton bears the burden of showing that he has "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020); *see also United States v. Weaver*, No. 1:17-cr-235, 2020 WL 4810123, at *2 (E.D. Va. Aug. 18, 2020) (finding defendant has the burden of proof when attempting to establish that a medical condition is an "extraordinary and compelling").

4

At 56 years old, Horton is not in the age group the Centers for Disease Control and Prevention ("CDC") considers to be of the highest risk. *See* People with Certain Medical Conditions, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/bneed-extra-precautions/people-with-medical-conditions.html#serious-heart-conditions (last updated May 11, 2023) (noting that ages 65 and up are considered high risk). Further, glaucoma is not listed on the CDC's list of medical conditions that create a higher risk of serious complications when COVID-19 is contracted. *See id.* Additionally, his medical records note that Horton is receiving treatment for the glaucoma and the treatment is effective. [Doc. No. 54-1] at 27; see *United States v. Kenney*, No. 3:16-cr-143, 2021 WL 399724, at *1 (E.D. Va. Feb. 4, 2021) (explaining that when a chronic condition can be managed in prison it is not a sufficient basis for compassionate release). Finally, while Horton asserts that he has asthma, a "high-risk" condition, nothing in his medical records indicates that he is asthmatic. [Doc. No. 54-1] at 21-30; *see United States v. Hight*, 488 F. Supp. 3d 184, 192 (E.D. Pa. 2020) (finding that alleged health conditions are not considered extraordinary and compelling reasons when they are unsupported by the defendant's medical record). Horton has also refused to obtain vaccination against COVID-19. [Doc. No. 50] at 6,7; *see United States v. Fall*, No. 2:17-cr-012, 2021 WL 4623863, at *5 (E.D. Va. Oct. 7, 2021) (an inmate "... cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate this risk.").

Horton also fails to present an adequate "particularized risk of contracting the disease at his facility." *Feiling*, 453 F. Supp. 3d at 841. While Horton claims as of December 16, 2022, that the prison is "experiencing another wave of COVID-19 infections," current reports from USP Florence ADMAX show that they have no active COVID-19 cases. *See* Federal Bureau of Prisons Inmate COVID-19 Data, BUREAU OF PRISONS, https://www.bop.gov/about/statis-

5

tics/statistics_inmate_covid19.jsp (last viewed July 12, 2023). Because Horton has not presented a "particularized susceptibility to the disease" or a "particularized risk of contracting the disease," Horton has failed to establish an "extraordinary and compelling reason" based on COVID-19.

Horton's second asserted "extraordinary and compelling reason" is an alleged disparity between his sentence of life imprisonment and the sentence he would receive today, based principally on the no longer mandatory nature of a guideline sentence. [Doc. No. 50] at 13. Specifically, Horton claims that 24 years is the national average sentence for murder. *Id.*

Horton was charged under 18 U.S.C. § 1111(b), which by statute mandates life imprisonment or death. The Guideline Sentence at the time of his sentencing was also Life, which the District Court was also obligated at the time to impose. But while the applicable guideline sentence would no longer be mandatory, the mandatory life sentence imposed by statute has not changed. Therefore, unlike *McCoy*, where the defendants' sentences were significantly longer than the national average and Congress had subsequently lowered the penalty for the offense conduct, *see McCoy*, 981 F.3d at 285, Horton's sentence, while substantially longer than the national average for murder, is the same sentence he or others would receive today based on a conviction under § 1111(b), notwithstanding that the applicable Guideline Sentence, standing alone, would no longer be mandatory. In short, unlike the sentence at issue in *McCoy*, there is no indication Congress views sentences under 18 U.S.C. § 1111 "as dramatically longer than necessary." *Id.* at 286.

Lastly, Horton cites his youth and rehabilitation as "extraordinary and compelling reasons" to justify his release. [Doc. No. 50] at 11, 12. While Defendant's age at the time of the offense and rehabilitation can be relevant considerations in determining whether an "extraordinary and compelling" reason exists, those considerations alone are typically insufficient, *see, e.g. Redd*, 444

6

F. Supp. 3d at 722. and must be considered within the context of other factors, including a defendant's prior criminal history, his subsequent conduct, the length of his sentence and any sentence disparity. *See, e.g., McCoy*, 981 F.3d at 286. Here, none of these factors weigh in Defendant's favor. His sentence, while certainly lengthy, was statutorily mandated, and therefore without a disparity in sentencing when compared with sentences imposed on others convicted of the same offense. He had an extensive prior criminal history, much of which involved violent behavior, and his time in prison had been riddled with disciplinary infractions, many of them involving threatening or violent behavior, including relatively recent charges of possessing a dangerous weapon and fighting with another inmate. *See* [Doc. No. 54], at 7-8; 11-12; (detailing Defendant's post incarceration infractions and violent behavior). Nor are his rehabilitative efforts so exceptional as to outweigh other negative considerations. [Doc. No. 50] at 13-A. Thus, neither Horton's age at the time of sentence nor his (somewhat mixed) rehabilitative record provide "extraordinary and compelling reasons" justifying his release.

Even were there an "extraordinary and compelling" reason for relief, the Court cannot find that Horton's early release would be consistent with the factors listed in 18 U.S.C. § 3553(a) or that Defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g). U.S.S.G. §1B1.13(2). As discussed above, Horton's offense was serious and violent. Indeed, as reflected in its mandatory life sentence, Congress clearly views this crime to be among the most serious; and Defendant planned and executed Hoston's murder while serving time for other serious offenses. [Doc. No. 30] at 2. Horton's prospects for recidivist behavior appear high, as reflected in his lengthy prior criminal history, which consists of numerous juvenile, weaponry, and assault charges, *see* [Doc. No. 30] at ¶ 12-35, as well as his disciplinary record. *See* 18 U.S.C. § 3553(a)(2) (the sentence imposed must reflect the seriousness of the crime and

provide deterrence promoting respect for the law). Finally, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" would not be served, *see* 18 U.S.C. § 3553(a)(2), since granting Horton's Motion for Compassionate Release would result in a sentence disparity as to others who have been sentenced under 18 U.S.C. § 1111(b). For all these reasons, the § 3553(a) factors counsel against granting Horton's Motion for Compassionate Release; and in sum, Horton has failed to establish both that extraordinary and compelling reasons exist and that a sentence reduction is appropriate after considering the § 3553(a) factors.[2]

## IV. POTENTIAL INSTITUIONAL TRANSFER

Horton also complains that he has served an unusually long amount of time at USP Florence ADMAX and has been subjected to solitary confinement for roughly 30 years. [Doc. No. 50] at 21. Under 18 U.S.C. § 3621(b) the Bureau of Prisons ("BOP") is charged with designating an inmate's place of imprisonment, after considering a variety of factors, including the recommendations of the sentencing court. Given the length of Defendant's placement at the Florence facility, the Court recommends that the BOP review that placement in light of his progress in the USP Florence ADMAX Program and his status for redesignation and potential transfer.[3]

## V. CONCLUSION

Accordingly, for the above reasons, it is hereby

**ORDERED** that Defendant's Compassionate Release Motion, [Doc. No. 50], and Motion for Counsel, [Doc. No. 51], be, and the same hereby are, **DENIED**; and it is further

---

[2] The Court rulings herein are without prejudice to any relief Defendant may seek under 18 U.S.C. § 3581 (c)(1)(A)(ii) once Defendant reaches the age of 70.

[3] This Order does not preclude Defendant from filing a motion under 42 U.S.C. § 1983 to challenge the conditions of his confinement.

8

**ORDERED** that within ninety (90) days of the date of this Order the Bureau of Prisons re-evaluate Horton's security designation and assigned institution of confinement, following which BOP shall file a notice with the Court certifying their compliance with this Order.[4]

**This is a Final Order for the purposes of appeal.** To appeal, Defendant must file a written notice of appeal with the Clerk's Office within fourteen (14) days of the date of this Order. A written notice of appeal is a short statement stating a desire to appeal this Order and noting the date of the Order Defendant wants to appeal. Defendant need not explain the grounds for appeal until so directed by the court.

The Clerk is directed to forward copies of this Order to *pro se* Defendant at USP Florence ADMAX, all counsel of record, and the Bureau of Prisons.

July 14, 2023
Alexandria, Virginia

/s/
Anthony J. Trenga
Senior United States District Judge

---

[4] To be clear, nothing in this Order is intended to require Horton's transfer, but merely directs that his placement be reviewed according to the BOP's established standards and considerations.

9